†HENRY WESTON ET AL. v. (COM'RS) HAMILTON COUNTY ET AL.

**1. LEGISLATURE MAY FIX TAXING DISTRICT—LAW NOT INVALID BECAUSE OUTSIDE LANDS ARE BENEFITED.**
The act of April 22, 1890, for the improvement of Erie avenue, (87 O. L. 577), and the proceedings under the same are not invalid, on the sole ground that it is alleged and shown that other parcels of land, adjacent to, but outside of the assessment district created thereby, will be greatly benefited by such improvement, and much more than other parcels within the same. The right of the legislature to fix the limits of the taxing or assessment district in such cases, can not be questioned.

**2. WANT OF PROVISION THAT ASSESSMENT SHALL NOT EXCEED BENEFITS DOES NOT INVALIDATE.**
Nor should such act by this court be held to be unconstitutional, upon the ground that by the provisions of the same the lands within such district are to be assessed for the construction of the improvement "in proportion to the benefits which may result from said improvement to said lots and lands," and there is no express provision therein, that such assessment shall not in any case exceed the amount of the benefit conferred thereby on such property. If land was shown to have been assessed beyond its benefits, it would be a violation of the constitutional rights of the owner, and the assessment would be enjoined by the court.

**3. NOT ENJOINED BECAUSE ROAD NOT PUBLIC PROPERTY IF IT BECOMES SO.**
An assessment under a special statute will not be enjoined because the road to be improved was not public property, if it became such since the proceedings were begun.

Appeal from the Court of Common Pleas of Hamilton county.

SMITH, J.

The plaintiffs in this case bring this action against the county commissioners, the county auditor and the county treasurer of Hamilton county, seeking to enjoin the auditor from placing upon the duplicate, and the treasurer from collecting certain assessments which the commissioners had ordered to be placed upon the duplicate for collection, against certain parcels of real estate severally owned by said plaintiffs, for the purpose of improving Erie avenue, situate in Columbia township—the assessments so sought to be enjoined amounting in the aggregate to the sum of $5,518.00.

The statute under which the proceedings to improve this avenue were taken, was a local or special one, passed April 22, 1890 (87 O. L. 577), and the claims of the plaintiffs are substantially these:

First—That the statute itself gives no warrant for such proceedings or assessments, for the reason that in one of its essential features it is unconstitutional and void; and

Second—That even if it is not open to this objection, that Erie avenue was, at the date of the passage of the act, and at the commencement of the proceedings, only a private way, never having been dedicated to the use of the public as a highway, and that an assessment on the lands of others, to improve a private way, is unauthorized and invalid.

Third—That there were many lots and parcels of land lying adjacent to the ends of said avenue, and within one mile thereof, which will be greatly and specially benefited and enhanced in value by said improvement, which are not embraced within the limits of the taxing district, as established by said act, viz.: within one mile on either side of such ave-

---

†This judgment was affirmed by the supreme court, October 24, 1893, without report. Minshall and Spear, JJ., dissented, as follows: "It is not competent for the legislature to create an assessment district in a county or township, for the making or improvement of a highway, and require the improvement to be made without any discretion in the local authorities, or the people within the district. The legislature, in our opinion, does not possess such administrative powers. The case of State v. Com'rs, 35 O. S., 458, is bad law and should be overruled."

The circuit court decision is cited in State v. Trustees, 4 Ohio Circ., Dec., 389.

nue; and which lots and parcels of land not included in the taxing district, are more bene
fited than many which are within such district.

Fourth—That the provisions and requirements of such statute were not substantially
followed by the viewers, surveyor and the equalizing board, appointed under its provisions
and

Fifth—That said act in its operation is most unequal and unjust—"that it was passed
without the request, knowledge or consent of the plaintiffs, and that its passage was pro-
cured by and in the interest of persons who own a large quantity of ground outside of the
assessing district, but within a radius of one mile from the eastern terminus of the avenue"
* * * "and that it was the object of said persons so procuring the passage of said act
to enhance the value of these lands, and to enrich themselves by having this expense sad-
dled on the plaintiffs and other victims in the assessing district, and to make their lands
and farms suitable for building lots;" and the petition alleges that "they succeeded in their
enterprising endeavor."

As to these questions thus raised, we may say: First—That we think there
has been a substantial compliance with the provisions of this statute, in the man-
ner in which the proceedings have been carried on, and the objection that the
avenue in question is not a public highway is not well founded. If it was not a
public highway at the commencement of the proceedings, it has become one since.
Land has been substantially condemned for the purpose and conveyances have
been made thereof to the county, and it is, and must remain a public road.

Again, the right of the legislature to make a taxing or assessment district of
this character must be conceded to be beyond question—and this, too, although
it may appear that many tracts or parcels of land within the same would not be
appreciably benefited by such improvement. The theory of the law is that they
will be, and that the assessment made on the property within the same, will be in
accordance with and in proportion to the benefits conferred thereby. Nor will it
affect the validity of the act making the taxing district that it does not include
lands which will be benefited as much or more than some within the district.
Some general rule must be established, and when the legislature has done this,
it is not the province of a court to interfere with it, unless under the most ex-
treme circumstances. But it cannot be denied that if the allegations of the peti-
tion hereinbefore quoted, as to the operation and effect of this statute in this
respect, and as to the means used to bring about its passage are true, great injus-
tice has been done to the plaintiffs, at least, in this case. Indeed there are strong
grounds to believe that special legislation like this, of a purely local character,
brought about by the efforts of a few persons financially interested therein, where-
by it is made obligatory upon the commissioners of a county to make a certain
local improvement, and to assess the cost thereof on property within a certain
district, or to put the cost upon the general duplicate, is open to very grave objec-
tions. But if in addition to this, lands specially benefited, and adjacent to the
improvement, are studiously exempted from assessment therefor, and the burden
is imposed on others farther removed therefrom, and not so much benefited, such
legislation is essentially vicious, and courts will not be eager to enforce a statute
open to such objections. In this case the commissioners of the county, under
what seems to be the mandatory provisions of this statute, having in effect con-
demned and paid for the land for this highway, and expended large sums in im-
proving the road, in all about the sum of $33,000.00, if the assessments were held
to be wholly invalid, this would fall upon the county, instead of the adjacent bene-
fited property, as was ordered, unless the commissioners have taken indemnity
against such loss, which does not appear; and to prevent a result like this, it
would seem to be the duty of the court to uphold these assessments and the valid-
ity of this statute, unless it is clear that they are invalid.

The principal objection urged to the statute in question is this: that under
its provisions, the assessments thereby authorized for the improvement might
exceed the benefits conferred upon the lands so assessed, or even the value of the
land itself, and therefore it is in violation of the constitution of the state, which
does not allow private property to be taken for public use, without compensation
given therefor. The question thus presented is an interesting and important one.

The sections of the law, which it is claimed so provide, are as follows: ,

Section 2. The cost and expense of said improvement, together with the interest on any bonds issued by the commissioners for the same, shall be assessed upon and collected from the owners of the lots and lands situated within one mile on each side thereof, and from the lots and lands within one mile on each side thereof, in proportion to the benefits which may result from said improvement to said lots and lands." And substantially the same provision is found in sec. 5. And sec. 7 provides, "that if it be ascertained by the county auditor that the assessments on land upon the duplicate are not sufficient to pay for the construction of said improvement, he shall add to the assessments pro rata, the amount that the actual expense is found to be more than the assessments on the duplicate, and the additional assessments shall be placed on the duplicate with previous assessments for the construction of the improvement and shall be collected in like manner.".

It seems to be settled by the adjudication of our supreme court, that assessments for such public purposes can be upheld only on the ground that the lands so assessed are increased in value by the improvement in question, to an amount greater, or at the least, equal to the assessment made therefor. If it be more than this, it is a virtual confiscation of the private property of the owners for the public use, and a violation of the constitutional provision that private property shall ever be held inviolate, but subservient to the public welfare, and if taken for public use, compensation must be made therefor in money. In so far as assessments by municipal corporations are concerned, sec. 6 of art. 13 of the constitution, requires the legislature to restrict their powers of assessments so as to prevent the abuse of such power, and the same principle ought to be applicable to all assessments for public improvements, and this requirement has been complied with as to municipal corporations by the law limiting such assessment to 25 per cent. of the value of the property, as improved, unless waived in some way by the property owner.

The court, in deciding the case of Wewell v. Cincinnati, 45 O. S., 407, 424. say:

The foundation of special assessments for public improvements, is the special benefit derived by the owners of property, over and above the rest of the community. If the assessment imposed is in excess of advantage received, to that extent, there is a contribution to the public use without compensation. As said by the court in Stewart v. Palmer, 74 N. Y., 189: "Assessments for local improvements can be justified only upon the theory that the lands upon which they are laid are specially benefited by the improvements for which they are laid, and hence ought to bear the burden rather than property generally; and if a law should authorize such assessments to be laid without reference to benefits, it would either take property for public good without compensation, or it would take property from one person for the benefit of another." And in Chamberlain v. Cleveland, 34 O. S., 551, 562, it is stated as a fundamental principle that "if a sum is exacted in any instance in excess of the value of the special benefits conferred, it is, as to such excess, in that instance, private property unjustly taken for public use without compensation to the owner."

The question then is, does this statute so contravene this principle of constitutional law as to render it invalid? It is manifest that there is no statement therein that the assessments therein provided for shall not only be placed on property, in the district thereby created, specially benefited by the improvement, and that they shall in no case be in excess of the benefits conferred thereby on the property so assessed. The scheme of the statute seems to be this: That the viewers are to assess and determine the damages sustained by any person through whose premises the improvement is made, and to assess the entire estimated expense of the improvement upon the lots and lands within the assessment district, in proportion, as nearly as may be, to the benefits which may result from said improvement to said lots and lands so assessed. Nor does the statute say that such assessment is to be apportioned thereon, "according to the benefit to be derived therefrom," as was the case in Eastman v. Com., 17 O. S., 559, but in proportion to the benefits resulting. It is easy to imagine a case where the assessment district is so small, and the cost of the proposed improvement so great, that although all of the lands within the district may be benefited in some degree, yet the cost would be greater than the benefits conferred, or even than the value of the land itself, and yet under provisions like those found in the statute under con-

sideration, the whole cost must be imposed upon such lands.    But in such a case it is clear that the assessment could not be upheld for the full amount.    But the difficult question is, whether a statute which apparently confers such power, must be held to be absolutely invalid wherever it is set up as a ground or warrant for any assessment, or whether an assessment made under it is good, unless it is made to appear in a given case, that it exceeds the amount of the benefits conferred by the improvement upon the land upon which it is placed.

As to this we may say, that the weight of authority elsewhere seems to us to favor the first of these views.    Several cases have been cited to us where the proposition is strongly stated.    Among others, we refer to 18 N. J. Eq. Rep. 526; 50 Ill. 96; 60 Ill. 19, and 3 Pac. Rep. 455.

We are of the opinion, however, that a different rule has been followed by our supreme court in the case of Bowles v. State, 37 O. S. 35.    As we understand that decision, it is to this effect: that although the provisions of a statute may in some cases, when attempted to be carried into operation, be in violation of some constitutional right, yet if it can be applied to other cases without infringing thereon, such statute will not be held to be absolutely void, but will be enforced in cases where it does not violate any such constitutional right or provision. The statute under consideration in that case, established a taxing district, and authorized a levy of extra taxes on lands and personal property within one mile on each side of a road proposed to be improved, except, when such road crossed another free turnpike road, in which event it was provided that the lands and personal property lying within one mile on either side of the point where such free turnpike roads cross each other, were to be assessed and taxed in a manner different from that provided for the residue of the lands in the taxing district, viz.: in proportion to benefits.    The court held that if there was in a given case such a crossing of roads, the statute would be unconstitutional as introducing two modes of taxation in one district and thus violating the rule of uniformity required by the constitution.    But if there be no such crossing, the statute could operate, and would not be held to be void.

So in this case, if the assessments in fact exceed the benefits conferred by the improvement (and there is no claim that they do in any instance), while they would be invalid, the statute itself would not be held absolutely void.    And apparently the same principle is followed in the cases reported in the case of Gilpin v. Williams, 25 O. S. 283, and Nimmons v. Westfall, 33 O. S. 213, which, in effect, decide that the statute therein considered, which provided, as the court held, that it should apply to the sale of entailed estates created before the passage of the act, as well as to those created afterwards, must be held unconstitutional as to the first, but was constitutional and would be enforced as to those thereafter created.

In addition to these considerations, the supreme court, in State v. Comrs., 17 O. S. 559, held that the act of March 29, 1867, authorizing county commissioners to construct free turnpike roads, and which provided that the estimated cost of the work should be assessed upon the lands within the assessment district thereby fixed, "according to the benefit to be derived therefrom," was a constitutional enactment.    The language of that statute, and of the one now under consideration, is not identical, but is perhaps the same in substance.    It is true that the precise objection now made to such legislation was not raised or decided in that case, and it is not therefore decisive of the point.    But in view of this decision, and of the fact that substantially the same language as to the mode of assessment is used in all of the acts of the general assembly which authorize the construction of free turnpike roads on the assessment plan, and without any words therein expressly providing that the assessments shall not exceed the benefits conferred, and that these statutes for many years have been acted upon, and some of them upheld by the supreme court (though no question was raised as to this particular point), we are of the opinion that we would not be justified in holding

the law to be unconstitutional. The petition will, therefore, be dismissed, but under the circumstances, we think the costs should be paid by the defendants.

Wm. M. Ampt and G. H. Wald, for plaintiffs.

F. M. Spiegel, county solicitor, and Wallace Burch, for defendants.